UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DORIAN BROWN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:19-cv-00944-GCS |
| | ) |
| DR. ALFONSO DAVID, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Dorian Brown, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that Defendant Alfonso David violated his Eighth Amendment right to be free from cruel and unusual punishment by treating Plaintiff's leg and knee injuries with deliberate indifference during Plaintiff's incarceration at Shawnee Correctional Center ("Shawnee").[1] (Doc. 10). By motion dated July 20, 2020, Defendant moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit. (Doc. 24). Plaintiff, *pro se*, responded in opposition on October 27, 2020. (Doc. 33). The Court held an evidentiary hearing on December 1, 2020; pursuant to the hearing, both Defendant and Plaintiff filed supplements to their motion and response, respectively. (Doc. 42 & 43). For the reasons delineated below, Defendant's motion is **GRANTED**.

---

[1]     Plaintiff is currently incarcerated at Hill Correctional Center. (Doc. 10).

**FACTUAL ALLEGATIONS**

Plaintiff first brought suit against Defendant David and Wexford Health Sources, Inc. on August 29, 2019. (Doc. 1). In his complaint, Plaintiff alleged two counts under 42 U.S.C. § 1983: (i) that Defendant David was deliberately indifferent to Plaintiff's serious medical needs by failing adequately to treat Plaintiff's knee and leg injuries; and (ii) that Wexford Health Sources, Inc. had an unconstitutional policy, practice or custom of failing to train or supervise prison doctors regarding the proper treatment of inmates. (Doc. 1). On January 16, 2020, the Court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on Count 1. (Doc. 10). The Court dismissed Count II, and resultingly dismissed Wexford Health Sources, Inc., from the case. (Doc. 10).[2] In his motion for summary judgment, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to the only remaining count, Count I. (Doc. 24).

Plaintiff's complaint stems from an incident occurring on February 3, 2017, in which Plaintiff fell from the bed of a trailer and injured both legs and knees. (Doc. 1, p. 3-5). In his complaint, Plaintiff states that he met with Defendant for treatment of these injuries many times between February 3 and July 27, 2017. (Doc. 1, p. 4). However, during the hearing on this motion, Plaintiff claimed that he also saw Defendant in August, though he does not specify a date on which he saw Defendant during that month. (*See* Doc. 33, p. 3).

---

[2] With the consent of the parties, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 9).

Defendant asserts that Plaintiff filed only one grievance pertaining to this complaint, an emergency grievance dated September 26, 2017. (Doc. 24, p. 3). The Chief Administrative Officer ("CAO") at Shawnee denied Plaintiff's request for expedited review on October 2, 2017 and instructed Plaintiff to submit his grievance through the normal grievance process. (Doc. 24, p. 4). Shortly thereafter, on October 13, 2017, Plaintiff's counselor responded that Plaintiff had not been seen in the Health Care Unit ("HCU") since July 27, 2017. (Doc. 24, p. 4). Plaintiff's counselor instructed that if Plaintiff continued to have complaints, he should put in a nurse sick call request. (Doc. 24, p. 4). For the same reason, on November 13, 2017, a Grievance Officer Denied Plaintiff's grievance; the CAO concurred on November 17, 2020. (Doc. 24, p. 4). On December 5, 2020, the ARB refused to address Plaintiff's grievance because it was not submitted in the timeframe outlined under Department Rule 504; under that rule, the grievance was due on September 25. (Doc. 24, p. 4). Plaintiff's medical records do not contain any record of a visit with Defendant in August 2017. (Doc. 42).

Plaintiff responds that he last saw Defendant in August 2017, and filed his grievance in September, well within the timeframe permitted. (Doc. 33, p. 3). On August 18, 2017, Plaintiff saw his counselor and asked her what he should do; she responded that Plaintiff should file an emergency grievance. (Doc. 43, p. 1). Plaintiff claims that he did not turn in his grievance until September 26, 2017 because his counselor agreed to look over it and make sure he wrote it correctly. (Doc. 43, p. 2). The notes of Plaintiff's counselor confirmed that she explained the grievance procedure to Plaintiff on August 18, 2017. (Doc. 43, p. 4).

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter asserted. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Id.* at 740-741.

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2005). To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, in *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit highlighted three possible outcomes if the Court finds a plaintiff did not exhaust his administrative remedies: (i) if the plaintiff failed to exhaust, the plaintiff must go back and do so; (ii) if the failure to exhaust was innocent, such as where prison officials prevent the plaintiff from properly exhausting, the plaintiff must be given another chance to exhaust; or (iii) if the failure to exhaust was the plaintiff's fault, the case is over. *See Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The

grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must contain factual details regarding each aspect of the prisoner's complaint; if a prisoner does not know the names of individuals involved, the prisoner must include as much descriptive information about that individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(c).

Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The officer must then consider the grievance and report findings and recommendations in writing to the CAO within two months after receipt of the grievance, when reasonably feasible under the circumstances. *See* 20 ILL. ADMIN. CODE § 504.830(e).

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE

§ 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines that the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. In order to exhaust administrative remedies, a prisoner must file complaints and appeals in the time and place the prison's administrative rules require. *See Pozo*, 286 F.3d at 1025. Unless a

prisoner completes the administrative process by following the rules established for that process, exhaustion has not occurred. *Id.* at 1023.

## ANALYSIS

If prison officials do not respond to, or otherwise use affirmative misconduct to prevent a prisoner from exhausting administrative remedies, that remedy is considered exhausted. *See Dole*, 438 F.3d at 809; *see also Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir.2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004). In *Peterson v. Miami Correctional Facility*, No. 3:07–CV–397, 2009 WL 523117 (N.D. Ind. Feb. 27, 2009), the District Court for the Northern District of Indiana outlined the difference between misconduct making a plaintiff's failure to exhaust the prison officials' fault and conduct which does not rise to that level. *Id.* at *3-5. Though the plaintiff asserted that prison officials, including the counselor for his cellblock, took or otherwise destroyed his grievances, the plaintiff's counselor and other prison officials filed declarations swearing the plaintiff simply did not reach out to them regarding the grievance process. *Id.* at *3-4. The plaintiff eventually filed his grievance past the deadline; because the court credited the grievance officials' declarations, it found that plaintiff failed to exhaust due to his own fault. *Id.* at *5, 7.

Defendant's argument is straightforward: Plaintiff last saw Defendant on July 27, 2017; under the applicable timeline, any grievance was due on September 25, 2017. (Doc. 24, p. 7). Plaintiff filed his grievance on September 26, 2017 – one day past the deadline to so file. (Doc. 24, p. 7). There is no evidence to support Plaintiff's contention that he last saw Defendant in August, and the Court refuses to credit Plaintiff's testimony in that

regard.[3] The appropriate date by which to measure whether Plaintiff's grievance was timely therefore remains September 25, 2017.

Although Plaintiff submitted his grievance on September 26, 2017, making his grievance untimely, Plaintiff also relied on his counselor, a prison official, to review his grievance form prior to submission. Plaintiff did so because his counselor told him that she would assist him with this process. Though Plaintiff states that he had written his grievance weeks prior to the deadline, there is no evidence regarding when Plaintiff then submitted his grievance to his counselor for review. There is similarly no evidence that Plaintiff's counselor told Plaintiff she would review his grievance out of a desire to delay Plaintiff's exhaustion, or otherwise used affirmative misconduct to cause Plaintiff's delay. Unlike the plaintiff in *Peterson*, Plaintiff does not allege that his counselor actively prevented him from exhausting his remedies. Instead, the available evidence suggests that Plaintiff talked with his counselor on August 18, 2017, and then did not discuss the grievance procedure with his counselor again until he attempted to submit his grievance on September 26, 2017. (Doc. 43, p. 4). Though Plaintiff may have relied on his counselor to review his grievance for procedural deficiencies, this reliance is not in itself sufficient to transfer fault for Plaintiff's delay from Plaintiff to his counselor. Plaintiff therefore failed to exhaust his administrative remedies due to his own delay; accordingly, the motion for summary judgment is granted.

---

[3] The Court also evaluates Plaintiff's claim in light of his own assertion that he last saw Defendant in July 2017, as outlined in his complaint. (Doc. 1, p. 3-5). A party's contention of fact in a pleading is a judicial admission by which it is bound. *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

## CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment for failure to exhaust administrative remedies (Doc. 24) is **GRANTED**. The Court DIRECTS the Clerk of the Court to dismiss this case without prejudice.

**IT IS SO ORDERED.**

Dated:  January 15, 2021.

Digitally signed by Judge Sison 2
Date: 2021.01.15 15:43:45 -06'00'

GILBERT C. SISON
United States Magistrate Judge